| | | |
|---|---|---|
| IN RE PARAGON OFFSHORE PLC, | : | Chapter 11 |
| | : | |
| Debtor. | : | Case No. 16-10386 (CSS) |
| | : | |
| MICHAEL R. HAMMERSLEY, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civ. No. 18-157-LPS |
| | : | |
| PARAGON OFFSHORE PLC, | : | |
| | : | |
| Appellee. | : | |

## **MEMORANDUM**

This dispute arises in the Chapter 11 cases[1] of Paragon Offshore plc ("Paragon Parent")[2] in

connection with its plan (*Paragon* D.I. 1459) ("Plan"), as confirmed on July 7, 2017 (*Paragon* D.I.

1614) ("Confirmation Order") and as modified on July 17, 2017 (*Paragon* D.I. 1775) ("Plan

Modification Order"). Presently before the Court is appellee Paragon Parent's motion to dismiss

(D.I. 18) ("Motion to Dismiss") the *pro se* appeal filed by equity holder Michael R. Hammersley

("Appellant") from an Order entered by the Bankruptcy Court on January 10, 2018 (*Paragon* D.I.

2047) ("Order Denying Revocation"), which denied Hammersley's motion for revocation of the

Plan Modification Order. For the reasons that follow, the Court will grant the Motion to Dismiss.

---

[1] *In re Paragon Offshore plc*, Case No. 16-10386 (CSS) (Bankr. D. Del.). The docket of the Paragon Cases is cited herein as "*Paragon* D.I. ___." On January 10, 2018, the Bankruptcy Court entered its *Order Closing Certain Chapter 11 Cases* (*Paragon* D.I. 2041) closing the chapter 11 cases of all the Debtors except Paragon Offshore plc, Case No. 16-10386 (CSS).

[2] The mailing address for Paragon Offshore plc (in administration) is c/o Deloitte LLP, Four Brindleyplace, Birmingham, B1 2HZ, United Kingdom. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "Joint Administrators"). The affairs, business, and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

# I.     BACKGROUND

## A.     The Paragon Cases

On February 14, 2016, Paragon Parent and certain of its affiliates (collectively, the "Debtors") filed their Chapter 11 cases (the "Paragon Cases"). Paragon Parent is the sole equity owner of Prospector Parent. Prospector Parent is the sole equity owner of Prospector Rig 1 Contracting Company S.à r.l. ("Prospector Rig 1") and Prospector Rig 5 Contracting Company S.à r.l. ("Prospector Rig 5"), and owns (either directly or indirectly) certain non-debtor subsidiaries (collectively, the "Prospector Entities"). The Prospector Entities were not debtors in the Paragon Cases. Appellant is a shareholder of Paragon Parent. Appellant does not own equity in any of the Prospector Entities.

In March of 2017, a group of purported shareholders of Paragon Parent, including Appellant (together, the "Unofficial Equity Committee"), filed a motion to appoint an official equity committee in the Paragon Cases. Following an evidentiary hearing, the Bankruptcy Court denied the Unofficial Equity Committee's motion, finding, *inter alia*, that "equity [was] so . . . underwater that it would take, literally, a billion dollars or significantly more, maybe a billion three, a billion four, to put equity in the money." (D.I. 18 at Ex. C, 3/27/17 Hr'g Tr. at 68)

After three rounds of confirmation spanning over a year, the Debtors' Plan was confirmed by the Bankruptcy Court pursuant to a Confirmation Order entered on June 7, 2017. The Plan provides, in relevant part, (i) that equity interests in Paragon Parent "shall be deemed valueless and shall not receive any distribution under the Plan" (Plan § 4.8); (ii) through a corporate restructuring, the Prospector Entities, among other assets, would be transferred to New Paragon; and (iii) creditors senior to equity holders of Paragon Parent would receive all of the equity in New Paragon (*see id.* §§ 4.3, 4.4, 5.3, & 5.13). At the confirmation hearing, the Bankruptcy Court overruled an objection

asserted by the Unofficial Equity Committee (of which Appellant was a member) with respect to equity's treatment under the Plan, finding that:

> [T]he evidence overwhelmingly indicates there's at least [$]1.3 to $1.5 billion of shortfall before you get to a place where there would be any return to equity. That clearly supports cramming down equity. It indicates that unsecured creditors or any creditor senior to equity is not receiving more than they're entitled to. And since they're not getting everything they're entitled to, equity is not entitled to any recovery.

(*See* D.I. 18 at Ex. D, 6/7/17 Hr'g Tr. at 59)

On June 21, 2017, Appellant and another equity holder of Paragon Parent appealed the Confirmation Order (Civ. No. 17-802-GMS D.I. 1) ("Confirmation Order Appeal") and, on June 27, 2017, moved for a stay pending appeal in the Bankruptcy Court (the "First Stay Motion"). (*Paragon* D.I. 1712) The Bankruptcy Court denied the First Stay Motion. (*Paragon* D.I. 1712) Following the Bankruptcy Court's denial of the First Stay Motion, Appellants filed a motion for stay pending appeal in this Court. (Civ. No. 17-802-GMS D.I. 6) On July 7, 2017, the Court denied Appellants' request for stay pending appeal. (*Id.* at D.I. 9) Appellants subsequently withdrew the Confirmation Order Appeal. (*Id.* at D.I. 10)

On July 11, 2017, the Debtors filed a motion seeking approval of modifications to the Plan (the "Plan Modifications") including Paragon Parent's entry into a Management Agreement with New Paragon and the Joint Administrators, to (i) allow the Paragon Debtors to emerge from their Chapter 11 cases without delay, (ii) enable New Paragon to provide its future owners (the Debtors' secured and unsecured creditors) the economic benefits provided under the Plan with respect to the Prospector Entities without violating the terms of certain sale-leaseback agreements and related transactions that certain Prospector Entities were party to, and (iii) preserve Paragon Parent's ability to transfer the Prospector Entities to New Paragon after the Effective Date of the Plan upon the occurrence of certain events. (*Paragon* D.I. 1760) Pursuant to the Management Agreement, Paragon Parent agreed to, among other things, (i) transfer its shares in Prospector Offshore Drilling

3

S.à r.l. ("Prospector Parent") and thus the Prospector Entities to New Paragon upon the satisfaction

of the relevant conditions set forth in the Management Agreement, and (ii) for such time as

Prospector Parent is a subsidiary of Paragon Parent, pay to New Paragon an amount equal to all

amounts received by Paragon Parent in respect of its shares in Prospector Parent and exercise its

rights as holder of the shares of Prospector Parent as directed by New Paragon, in each case to the

extent permitted by Paragon Parent's pledge of the Prospector Parent shares in connection with the

sale-leaseback agreements to which the Prospector Entities were party.

The Plan Modification Motion and the Notice of Hearing with Respect to the Debtors' Plan

Modification Motion were served on counsel of record to Appellant via electronic mail and

overnight mail. (*Paragon* D.I. 1763, 1773, 1784)  On July 17, 2017, the Bankruptcy Court held a

hearing to consider the Plan Modifications.  None of the shareholders of Paragon Parent, including

Appellant, filed an objection or appeared at the hearing.  The Bankruptcy Court entered the Plan

Modification Order on the same day.  On July 18, 2017, the Plan went effective.  (*Paragon* D.I.

1792)

On or shortly after the Effective Date, (i) over $500 million in cash was distributed to certain

holders of secured and unsecured claims; (ii) equity interests in Paragon Offshore Limited ("New

Paragon") were issued to holders of secured and unsecured claims (the "New Equity Interests");

(iii) new debt in the aggregate principal amount of $85 million (the "Take Back Debt") was issued

to holders of certain secured claims; (iv) litigation trust interests (the "Litigation Trust Interests")

were issued to holders of secured and unsecured claims; and (v) Paragon Parent entered into the

Management Agreement with New Paragon and the Joint Administrators.

On December 4, 2017, four months after the Plan went effective, Appellant filed a motion to

revoke the Plan Modification Order (*Paragon* D.I. 2000) and, on December 20, 2017, Appellant

filed a related supplement (together, "Motion to Revoke").  Appellant's primary contention was that

the assets of the Prospector Entities were not involved in the Paragon Cases. On January 3, 2018, the Debtors filed an objection to the Motion to Revoke (*Paragon* D.I. 2032) to which Appellant filed a reply (*Paragon* D.I. 2039). The Bankruptcy Court denied Appellant's Motion to Revoke at a January 10, 2018 hearing (the "Revocation Hearing") and subsequently issued the Order Denying Revocation. (*Paragon* D.I. 2047)

At the Revocation Hearing, the Bankruptcy Court made several findings, including:

- the standard to revoke the Plan Modification Order under section 1144[3] of the Bankruptcy Code requires a showing of actual fraud;

- there was nothing presented in Appellant's papers or at the hearing that comes "remotely close" to any fraud being perpetrated against the Bankruptcy Court, the creditors, or shareholders in these cases;

- the Bankruptcy Court was adequately informed by Debtors' counsel of all the pertinent facts with respect to the Plan Modification Motion, and there was no deception in seeking a motion to shorten the notice requirements under the local rules;

- Appellant received proper notice of the Plan Modification motion and hearing through his attorney of record; and

- with respect to his arguments as to valuation and jurisdiction, Appellant's proper redress was to have filed an appeal of such rulings (before the relevant deadlines expired), not to file a motion invoking a statute that requires a showing of fraud and then provide no evidence of fraud.

---

[3] Section 1144 of the Bankruptcy Code provides:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall –

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

11 U.S.C. § 1144.

(1/10/18 Hr'g Tr. at 28-29; D.I. 18 at Ex. F)  On January 25, 2018, Appellant timely appealed the

Order Denying Revocation.  (D.I. 1)  Appellant also sought a stay of the Order Denying

Revocation.  (*Paragon* D.I. 2058) (the "Second Stay Motion")  Following a hearing, the Bankruptcy

Court on February 21, 2018 denied Appellant's Second Stay Motion.  (*Paragon* D.I. 2089)

B.      **Prospector Cases[4] and Related Appeals**

Paragon Parent is the sole equity owner of Prospector Parent.  Prospector Parent is the sole

equity owner of Prospector Rig 1 and Prospector Rig 5, two high specification jackup rigs located in

the U.K. North Sea (collectively, the "Rigs").  Each rig is subject to an agreement whereby the Rigs

were purportedly (i) sold to Prospector One Corporation and Prospector Five Corporation (the

"Prospector Corporations"), respectively, subsidiaries of SinoEnergy Capital Management, Ltd.

("SinoEnergy"), by Prospector Parent's non-Debtor subsidiaries, and (ii) contemporaneously leased

back by Prospector Rig 1 and Prospector Rig 5 (collectively, the "Contracting Debtors").

To secure the obligations arising under the Lease Agreements dated June 3, 2015 (the "Sale-

Leaseback Agreements"), the Contracting Debtors granted, among other things, security interests in

their rights, title, and interest in the monies credited, paid, or caused to be credited to

certain pledged accounts and all proceeds to Industrial and Commercial Bank of China, New York

Branch ("ICBC").  As additional security, Paragon Parent pledged its shares in Prospector Parent in

favor of ICBC, and Prospector Parent issued guarantees and pledged its shares in the Contracting

Debtors to ICBC.

On July 20, 2017, Prospector Parent, the Contracting Debtors, and Paragon

Parent (collectively, the "Prospector Debtors") commenced cases under Chapter 11 of the

Bankruptcy Code (the "Prospector Cases") to protect the Prospector Debtors' interest in the Rigs

_____

[4] *In re Prospector Offshore Drilling S.à r.l., et al.*, Case No. 17-11572 (CSS) (Bankr. D. Del.).  The
docket of the Prospector Cases is cited herein as "*Prospector* D.I. __."  The Prospector Cases were
dismissed on March 27, 2018.

and to maximize the value of their assets by working towards resolving the dispute arising under the

Sale-Leaseback Agreements with SinoEnergy. On February 14, 2018, the Prospector Debtors

entered into a settlement agreement (the "Settlement Agreement") with SinoEnergy, the Prospector

Corporations, New Paragon, and the Joint Administrators. The Prospector Debtors subsequently

filed motions seeking approval of the Settlement Agreement and dismissal of the Prospector Cases.

Following a hearing held on March 5, 2018, the Bankruptcy Court entered (i) the Settlement Order

(*Prospector* D.I. 368) authorizing the Prospector Debtors to enter into the Settlement Agreement,

and (ii) the Order Authorizing Dismissal (*Prospector* D.I. 368). No Chapter 11 confirmation plan

was ever proposed to or ordered by the Bankruptcy Court in the Prospector Cases.

At a November 30, 2017 hearing on Appellant's motion to appoint an official equity

committee in the Prospector Cases, the Bankruptcy Court again rejected Appellant's argument that

he, as a shareholder of Paragon Parent, had any economic interest in the Prospector Entities. (D.I.

18 at Ex. E, 11/30/17 Hr'g Tr. at 24 (rejecting Appellant's argument that he has equity interest in

Prospector Entities, holding that Appellant's "argument really boils down to a misunderstanding of

the law . . . that the equity holders of [Paragon Parent] somehow own equity of the Prospector

Entities. It's just incorrect as a matter of corporate law."))

On March 8, 2018, Appellant filed the (i) *Notice of Appeal of the Dismissal Order* (Civ. No.

18-367-LPS D.I. 1) and *Notice of Appeal of the Settlement Order* (Civ. No. 18-368-LPS D.I. 1) and,

on March 16, 2018, Appellant filed a motion for stay, seeking to stay the appealed Orders pending

such appeals. After considering Appellant's motion for stay, the Prospector Debtors' objection, and

Appellant's reply, the Court denied the motion (the "Stay Denial Order"),[5] finding that Appellant

failed to establish (i) a reasonable likelihood of success on the merits or (ii) that he would suffer

_____

[5] Civ. No. 18-367-LPS D.I. 37; Civ. No. 18-368 D.I. 37.

irreparable harm absent a stay. On March 26, 2018, Appellant filed an emergency motion with the Third Circuit Court of Appeals with respect to the Stay Denial Order and, on March 28, 2018, the Third Circuit entered an order denying Appellant's emergency motion for stay pending appeal of the Settlement Order and Order Authorizing Dismissal.[6]

### C. Consummation of Settlement Agreement, Transfer of Prospector Entities, Dismissal of Prospector Cases, and Closing of the Borr Transaction

On February 26, 2018, Borr Drilling Limited ("Borr Drilling") announced the commencement of a tender offer to purchase 100% of New Paragon's outstanding equity, in an all-cash transaction totaling $232.5 million (the "Borr Transaction"). In addition, Borr Drilling agreed to satisfy approximately $90 million in Take Back Debt (including interest) owed by New Paragon. As conditions precedent to closing the Borr Transaction, (i) New Paragon was required to complete all actions necessary to acquire ownership of the Prospector Entities (which required, *inter alia*, consummation of the Settlement Agreement) and (ii) the Bankruptcy Court had to have entered an order dismissing the Prospector Cases. On March 27, 2018, the Parties consummated the Settlement Agreement, Paragon Parent's shares in Prospector Parent were transferred to New Paragon, and the Bankruptcy Court dismissed the Prospector Cases pursuant to the Order Authorizing Dismissal. On March 29, 2018, the Borr Transaction closed.

The day before, on March 28, 2018, Appellant had filed a motion to vacate the Bankruptcy Court's Order Authorizing Dismissal ("Motion to Vacate"). (*Prospector* D.I. 407) On May 9, 2018, the Bankruptcy Court denied the Motion to Vacate (the "Order Denying the Motion to Vacate"). (*Prospector* D.I. 428) On May 15, 2018, Appellant filed an appeal of the Bankruptcy Court's Order Denying the Motion to Vacate. Those appeals are consolidated for procedural purposes and pending at Civ. No. 18-367-LPS.

---

[6] *In re Prospector Offshore Drilling S.a. r.l.*, et al., Case Nos. 18-1652 & 18-1653 (3d Cir. Mar. 28, 2018) D.I. 003112887688.

**D.    Motion to Dismiss**

On April 3, 2018, this Court entered an order setting a briefing schedule for dispositive motions in this appeal.  (D.I. 15)  On April 10, 2018, Paragon Parent filed its Motion to Dismiss the appeal on two grounds: (1) Appellant lacks standing to bring the appeal, and (2) the appeal is equitably moot.  (D.I. 18)  On April 24, 2018, Appellant filed an answering brief (D.I. 21, 23), and the Unofficial Equity Committee filed a substantive joinder.  (D.I. 24)  On May 1, 2018, Paragon Parent filed its reply in further support of the Motion to Dismiss.  (D.I. 25)  Thereafter, Appellant filed a motion for leave to file a sur-reply (D.I. 27), a proposed sur-reply (D.I. 28, 29), a supplement to the sur-reply (D.I. 35), various letters to the assigned judge (D.I. 35, 36, 37), and letter briefs concerning subsequent decisions (D.I. 40, 41).  Additionally, Appellant filed a request for oral argument (D.I. 30, 32), which Paragon Parent opposed (D.I. 31).  The Motion to Dismiss has been fully briefed.  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

**II.    PARTIES' CONTENTIONS**

Paragon Parent argues that the appeal should be dismissed because Appellant does not have standing to prosecute the appeal.  As a holder of valueless equity in Paragon Parent, Appellant was entitled to no recovery under Paragon Parent's Plan.  Having voluntarily dismissed his appeal of the Confirmation Order and having failed to appeal the Plan Modification Order, Appellant moved to have the Plan Modification Order revoked four months after its entry.  Because Appellant has no pecuniary interest affected by the entry of the Plan Modification Order, Appellant is not an aggrieved party, and his appeal of the Order Denying Revocation should be dismissed for lack of standing.

Paragon Parent further asserts that, even assuming the Court could find appellate standing, the appeal should be dismissed as equitably moot. According to Paragon Parent, its Plan, as modified by the Plan Modification Order, has been fully consummated, and any attempt to unwind the multitude of transactions effectuated under the Plan would be catastrophic for the recently reorganized business. Further, upending the Plan Modification Order (and the Plan) would substantially harm numerous third parties who have relied on the finality of the Confirmation Order and the Plan Modification Order.

Conversely, Appellant argues that he has standing as a party in interest as, he believes, the Bankruptcy Court has already found in permitting equity holders to be heard. Appellant argues that he and other equity holders of Paragon Parent had a residual interest in the Prospector Entities that were transferred to New Paragon. Appellant's contention forms the basis for his assertion that a fraud has taken place sufficient to warrant revocation under § 1144. Appellant further argues that equitable mootness should not be applied here. According to Appellant, the appeal will not disrupt the Plan, as reverting back to the Plan confirmed on June 7, 2017 still results in reverting back to a confirmed plan of reorganization preserving finality. Appellant further argues that there is no harm to third-parties because New Paragon does not have any publicly traded securities and third-parties were not justified in relying on the Plan Modification Order in the first place.

## III.     JURISDICTION

This Court has jurisdiction with respect to appeals as to all final judgments, orders, and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Order Denying Revocation denied Appellant's motion to revoke modifications made to the confirmed Plan, and it is a final order for purposes of this appeal.

# IV.    DISCUSSION

## A.    Appellant is Not a Person Aggrieved by the Order
## Denying Revocation and Lacks Standing to Appeal

Although the Bankruptcy Code does not contain a provision for appellate standing, the Third

Circuit has recognized that standing is a prerequisite to proceeding on appeal. *See In re Richardson*

*Indus. Contractors, Inc.*, 189 Fed. App'x 91 (3d Cir. 2006) (citing *In re Dykes*, 10 F.3d 184, 187 (3d

Cir. 1993)). Appellate standing in bankruptcy is limited to "persons aggrieved" by an order of the

Bankruptcy Court. *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) (citing *In re*

*Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)). The persons aggrieved test "now exists

as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or

interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy

court." *Combustion*, 391 F.3d at 214 (internal quotation marks omitted). To be a person aggrieved,

a party must challenge an order that "diminishes [its] property, increases [its] burdens, or impairs

[its] rights." *Id.* (internal quotation marks omitted). This standard is "more restrictive than the case

or controversy" standing requirement of Article III, with respect to which the injury "need not be

financial and need only be fairly traceable to the alleged illegal action." *Travelers Ins. Co. v. H.K.*

*Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (internal quotation marks omitted). The Third Circuit

has also found a lack of appellate standing in parties "who, even though they may be exposed to

some potential harm incident to the bankruptcy court's order, are not directly affected by that

order." *Id.* (internal quotation marks omitted). These requirements are rooted in the "particularly

acute need to limit appeals in bankruptcy proceedings, which often involve a myriad of parties . . .

indirectly affected by every bankruptcy court order." *Id.* (internal quotation marks omitted).

Appellant argues that, as a shareholder of Paragon Parent, he is "within the broad category

of a 'party in interest' and has standing to bring the appeal." (D.I. 21 at 5). Citing to a hearing

transcript from the Chapter 11 cases in connection with Appellant's motion to appoint an official

11

equity committee, Appellant asserts that the Bankruptcy Court has already expressly ruled that the "shareholders clearly have standing here and can be heard on any of these issues." (*Id.*) (citing Ex. 5, 3/27/17 Hr'g Tr. at 71-72) This Court agrees that, as an equity holder of Paragon Parent, Appellant clearly had standing to appear and be heard in the Chapter 11 cases. The Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). While this provision "confers broad standing at the trial level," "courts do not extend that provision to appellate standing." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000). Thus, the Bankruptcy Court's statement cannot be read as conferring appellate standing on equity holders. The appellate standard is necessarily more stringent: "if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988).

Paragon Parent argues that Appellant lacks appellate standing because his rights or interests were not affected by the Order Denying Revocation. According to Paragon Parent, Appellant was not entitled to any recovery under the Plan, which has been confirmed by what is now a final, non-appealable order. Under the Plan, equity holders were not entitled to any recovery, as secured creditors recovered only percentages on account of their claims. The Bankruptcy Court found it would take approximately $1.3 billion in additional value to creditors before equity holders would be entitled to any recovery. (*See* 6/7/17 Hr'g Tr. at 59) Appellant presented no competing evidence and was entitled to no recovery under the Plan.

The Court agrees with the Bankruptcy Court. Its finding that equity holders, including Appellant, are not entitled to any recovery under the Plan is not clearly erroneous.

The Court finds instructive a case cited by Paragon Parent, *Freeman v. Journal Register Co.*, 452 B.R. 367 (S.D.N.Y. 2010), in which the District Court considered whether to dismiss a former equity holder's appeal of a plan confirmation order for lack of standing. The plan confirmed in that case provided limited recovery to secured creditors (approximately 42% on account of their claims) and general unsecured creditors (approximately 9% on account of their claims). *See id.* at 369. The plan provided no recovery to the existing equity interests and cancelled the existing equity holders' stock. *See id.* at 370. Appellant objected to the plan and appealed the confirmation order with respect to certain incentive plan and trade account distribution mechanisms contained in the plan. *See id.* Appellant argued that his interests as a former shareholder were unfairly impaired by the confirmation order. *See id.* at 370-71.

The District Court found that appellant was not a person aggrieved with standing to bring the appeal and accordingly granted the motion to dismiss. *See id.* at 371-72.[7] It stated: "As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditor's ability to receive payment of their claims." *Id.* at 371 (quoting *Kane*, 843 F.2d at 642). The *Freeman* appellant did not satisfy the aggrieved person standard, however, "because, as an equity holder, he does not have a pecuniary interest at stake." *Id.* at 371. The *Freeman* Court observed that "the compromised recoveries [contained in the plan] clearly indicate that the Debtors, no matter the terms of a plan, were not sufficiently solvent to provide the equity holders with a recovery," noting that the bankruptcy court found that the secured lenders "were undersecured by more than $350 million." *Id.* Thus, "where various classes of creditors received less than their full recoveries the appellant, as an equity holder, has no basis for recovery and, accordingly, no pecuniary interest at stake." *Id.*

---

[7] It also determined that the appeal was equitably moot. *See Freeman*, 452 B.R. at 372-74.

Similarly, under the Plan in this case, secured creditors recovered approximately 53.5% and general unsecured creditors recovered approximately 30-35% – far less than full recovery. (*See Paragon* D.I. 1460 (Disclosure Statement)). The Bankruptcy Court made a finding that $1.3-$1.5 billion of additional value to ***creditors*** would be required before there could be any return to equity. The Court agrees with Paragon Parent that the Plan Confirmation Order, which is not on appeal, did not diminish Appellant's property, increase Appellant's burdens, or impair Appellant's rights. Instead, like the equity holder in *Freeman*, Appellant was not entitled to recovery under the confirmed Plan and does not have a pecuniary interest at stake.

Paragon Parent next contends that the Order Denying Revocation likewise did not diminish Appellant's property, increase Appellant's burdens, or impair Appellant's rights. Appellant has argued repeatedly that "Prospector was not part of the [Paragon] bankruptcy estate or contemplated in the bankruptcy plan approved on June 7, 2017." (D.I. 21 at 2) Appellant argues that he and other equity holders have an economic interest adversely affected by the Order Denying Revocation because shareholders had a residual interest in the transferred Prospector Entities. This forms the basis for Appellant's assertion that a fraud has taken place to warrant revocation under § 1144.

This argument has been repeatedly – and correctly – rejected by the Bankruptcy Court. Although the Prospector Entities were not debtors themselves in the Paragon Cases, the equity of these entities were assets of the Paragon Debtors and, therefore, subject to the Plan and jurisdiction of the Bankruptcy Court, as part of the Paragon Cases. These findings are not clearly erroneous, nor do they reflect any error of law.

The Prospector Entities were contemplated in the Plan. Section 1.1 of the Plan defines "Transferred Subsidiary" as "any of the Paragon Entities other than the Liquidating Subsidiaries," which would include the Prospector Entities. (*Paragon* D.I. 1459, Plan at ¶ 1.1) "Corporate Restructuring" is defined as "the reorganization of the Paragon Entities' corporate structure in

14

accordance with the Plan and the U.K. Implementation Agreement through which the Transferred Subsidiaries will be transferred to Reorganized Paragon." (*Id.*) "Paragon Entities" is defined as the "Paragon Parent together with its Debtor and non-Debtor direct and indirect subsidiaries." (*Id.*) "Reorganized Paragon" is defined as "a new company, which shall be classified as an association taxable as a corporation for U.S. federal income tax purposes, which shall become the holding company for the Transferred Subsidiaries." (*Id.*)

Moreover, the value of Prospector was included in the estimate of value going to the Debtor's creditors under the Plan. (*See, e.g.*, 11/30/17 Hr'g Tr. at 23) (Bankruptcy Court's finding that its previous determinations that equity was out of the money "*included a valuation of the Prospector entities*; i.e., the value of the debtors' equity in those entities as part of the finding that the value was insufficient to put [] equity in the money") (emphasis added)) The Paragon Debtors' evidence regarding valuation of the Reorganized Debtors, including estimated enterprise value, clearly states that it included the value of the Prospector Entities.[8]

Appellant argues the Paragon Parent's "credit agreements expressly warn that unrestricted subsidiaries will not respond in the event of a default of Paragon Parent's restricted subsidiaries" and "Paragon Parent's own general counsel affirmed that none of the creditors in the Paragon Cases have claims against Paragon Parent – only Paragon Parent's restricted subsidiaries . . . which leaves the ownership of the residual value of the Prospector entities and its proceeds to Paragon Parent and Paragon Parent's shareholders." (D.I. 21 at 17) Appellant further contends that the proceeds from

---

[8] *See Paragon* D.I. 1591 at ¶¶ 5, 7 ("Lazard advised the Debtors with respect to the gong concern reorganization value of the Reorganized Debtors, *including the enterprise value of Prospector Offshore Drilling SA* (collectively, with its subsidiaries, "Prospector") and, for all purposes, included the defined term ("*Reorganized Debtors*") … Lazard analyzed Prospector separately from the other Reorganized Debtors, and estimated a range of enterprise value implied by the DCF methodology for Prospector of $275 million to $325 million. *The range for Prospector was then added to the estimated enterprise value range for the remainder of the Reorganized Debtors of $250 million to $400 million to arrive at the total range referenced above*.") (emphasis added).

Paragon Parent's interest in Prospector must, therefore, be disgorged and distributed to Appellant and equity holders of Paragon Parent.

This Court joins the Bankruptcy Court in rejecting these contentions, which are "incorrect as a matter of corporate law." (11/30/17 Hr'g Tr. at 24) The credit agreements do not somehow give Paragon Parent's equity holders a priority right to, or ownership interest in, the Prospector Entities, whose equity Paragon Parent holds. Paragon Parent had both secured and unsecured debt standing ahead of equity holders for recovery. (*See Paragon* D.I. 1460) The fact that the Prospector Entities were not collateral for Paragon Parent's secured debt does not mean that the economic benefit of the Prospector Entities bypasses Paragon Parent's unsecured creditors, including the deficiency claim of Paragon Parent's secured creditors, and goes to Paragon Parent's equity holders.

Moreover, under the Plan and Management Agreement, New Paragon was an unsecured creditor of Paragon Parent, and Paragon Parent agreed to transfer its entire interest in the Prospector Entities to New Paragon (upon satisfaction of certain conditions in the Management Agreement) in partial satisfaction of that unsecured debt. In the Prospector Cases, New Paragon is a creditor and stands ahead of Appellant. (*Paragon* D.I. 1586) Pursuant to the absolute priority rule, Paragon Parent's equity holders cannot recover any proceeds, including those related to the Prospector Entities, until the secured and unsecured creditors in line in front of them have been paid in full. Even if this Court could somehow disgorge the proceeds of the Prospector Entities back to Paragon Parent, Appellant would recover nothing because Paragon Parent is still required to pay all such proceeds to New Paragon in satisfaction of its obligations to New Paragon. Thus, the Plan – including the related Management Agreement, whereby New Paragon received, among other things, the economic benefits of the Prospector Entities – is consistent with the absolute priority rule.

In sum, as an equity holder of Paragon Parent, Appellant had no economic interest in the Prospector Entities transferred to New Paragon. Even if Appellant were to succeed in this appeal,

the victory would not change the fact that the equity holders of Paragon Parent, including Appellant, are not entitled to any recovery or distribution from Prospector Debtors. Revocation of the Plan Modification Order cannot improve Appellant's economic position. Based on Appellant's lack of pecuniary interest in the Order Denying Revocation – including the prior Plan Confirmation Order and the Plan Modification Order – Appellant lacks appellate standing and his appeal must be dismissed.

### B.    Equitable Mootness

Even assuming Appellant had standing to appeal the Order Denying Revocation, the appeal must be dismissed as equitably moot.

Following confirmation of a reorganization plan by a Bankruptcy Court, an aggrieved party has the statutory right to appeal the court's rulings. *See In re SemCrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013). Once there is an appeal, there is a "virtually unflagging obligation" of federal courts to exercise the jurisdiction conferred on them. *Id.* (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Before there is a basis to forgo jurisdiction, granting relief on appeal must be almost certain to produce a perverse outcome – chaos in the bankruptcy court from a plan in tatters and/or significant injury to third parties." *Id.* (internal quotation marks omitted); *see also In re Continental Airlines*, 91 F.3d 553, 560-61 (3d Cir. 1996) (*en banc*). "Only then is equitable mootness a consideration." *SemCrude*, 726 F.3d at 320.

Appellant argues that the Third Circuit has not yet addressed whether equitable mootness can apply to claims of fraud under § 1144 of the Bankruptcy Code and that Paragon Parent has failed to cite any controlling case law. (D.I. 21 at 21-22) In arguing for equitable mootness, Paragon Parent relies on *Innovative Clinical Solutions*, 302 B.R. 136, 141-42 (Bankr. D. Del. 2003), where the Bankruptcy Court dismissed a complaint seeking revocation of plan confirmation under § 1144 based on equitable mootness. Appellant counters by citing to *In re SemCrude, L.P.*, 728 F.3d

314, 317 n.1 (3d Cir. 2013), in which the Third Circuit recognized that bankruptcy courts have

applied the equitable mootness doctrine outside of the appellate context, but expressed "no opinion

on whether use of the doctrine there is appropriate." The parties cite no authority that would

preclude application of the equitable mootness doctrine in the context of the appeal of an order

denying revocation of a plan under § 1144 where the relevant factors are satisfied. Thus, the Court

will turn to application of those factors now.

The Third Circuit has explained that the equitable mootness analysis should proceed in two

steps: "(1) [determining] whether a confirmed plan has been substantially consummated; and (2) if

so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b)

significantly harm third parties who have justifiably relied on plan confirmation." *SemCrude*, 728

F.3d at 321. "Satisfaction of this statutory standard indicates that implementation of the plan has

progressed to the point that turning back may be imprudent." *Id*. The burden of demonstrating

these factors is on the party seeking dismissal. *See id.*

### 1. The Plan is Substantially Consummated

Substantial consummation is defined in the Bankruptcy Code to mean the

(A)    transfer of all or substantially all of the property proposed by the plan to be
transferred;

(B)    assumption by the debtor or by the successor to the debtor under the plan of the
business or of the management of all or substantially all of the property dealt with by
the plan; and

(C)    commencement of distribution under the plan.

11 U.S.C § 1101.

Paragon Parent's Plan was substantially consummated on or shortly after the Plan went

effective on July 18, 2017, when the proposed transfers were consummated, New Paragon took

ownership of the transferred property, Paragon Parent entered into the Management Agreement to

18

provide New Paragon with the economic benefits in relation to the Prospector Entities until conditions allowed for the Transfer of the Prospector Entities to New Paragon after the Effective Date, and distributions were made to Paragon Parent's secured and unsecured creditors, including (i) over $500 million in cash, (ii) New Equity Interest in New Paragon, (iii) Take Back Debt in the aggregate principal amount of $85 million, and (iv) Litigation Trust Interests.  Appellant does not appear to dispute that the Plan has been substantially consummated.  (*See* D.I. 21 at 20-25)

## 2.    Granting the Requested Relief Would Fatally Scramble the Plan

Appellant seeks either revocation of the Plan Modification Order, pursuant to § 1144, or disgorgement of sale proceeds from the management and former shareholders of New Paragon to compensate Paragon Parent for its interest in the Prospector Entities.  (*See* D.I. 21 at 22)  While revocation of the Plan Modification Order would not undo the transactions consummated pursuant to the original Confirmation Order, including transfer of the Prospector Entities to New Paragon (*see* D.I. 18 at 17), such relief would be fatal to the Plan.  (*See id.*)  Pursuant to the Plan, holders of secured and unsecured claims received, *inter alia*, their pro rata share of cash and equity interests in New Paragon in exchange for their claims.  Unwinding the transfer of the Prospector Entities to New Paragon as a purported fraudulent transfer would have the effect of depriving creditors of Paragon Parent (now the equity holders of New Paragon) of receiving the full value of their distributions promised under the Plan.  This would likely require the Court to disgorge and reallocate all of the distributions under the Plan, including over $500 million of cash, New Equity Interests, the Take Back Debt, and the Litigation Trust Interests that have been distributed to Paragon Parent's creditors.  Likewise, granting recovery to Appellant would also fatally scramble the Plan because there is no relief that could be layered onto the existing Plan consistent with governing law.  A distribution to Appellant without paying other equity holders of Paragon Parent would constitute disparate treatment, in violation of § 1123(a)(4) of the Bankruptcy Code.

Moreover, Debtors cannot make a distribution to Appellant without violating the absolute priority rule under § 1129(b)(2)(B)(ii). Such relief is inequitable and not practicable.

### 3. Granting the Requested Relief Would Injure Third Parties

The Court must also consider the extent to which a successful appeal, by altering the Plan or otherwise, will harm third parties who have acted reasonably in reliance on the finality of Plan confirmation. *See SemCrude*, 728 F.3d at 321. Appellant argues that any reliance by creditors here is not justifiable because they should have been aware that the Plan modifications are void. (D.I. 21 at 22) The Court disagrees. Instead, unwinding of Plan transactions, such as the transfer of the Prospector Entities to New Paragon, would adversely affect third parties, including (i) the equity holders of New Paragon, (ii) Borr Drilling, (iii) the Prospector Entities, and (iv) the holders of the Take Back Debt. Numerous courts, including the Third Circuit, have dismissed appeals as equitably moot where they would upset complex transactions that have already been consummated. *See, e.g., Tribune,* 799 F.3d at 278 (dismissing appeal in part because court found that revocation of settlement in plan would harm third-parties, including those who invested in reliance on settlement); *In re Allied Nevada Gold Corp.*, 569 B.R. 213, 222 (D. Del. 2017), *aff'd* 2018 WL 1474932 (3d Cir. Mar. 27, 2018) (dismissing appeal because relief requested would adversely affect exit lenders, recipients of new stock and warrants, and parties who may have bought such instruments); *Continental*, 91 F.3d at 566-67 (finding appeal equitably moot where other parties had changed their positions and "irrevocable transactions ha[d] since been completed as a result of the consummation.").

## V. CONCLUSION

Appellant is not a person aggrieved by the Order Denying Revocation and lacks standing to bring this appeal. The appeal must be dismissed. Even if Appellant did not lack standing, the facts

of this appeal would support dismissal under the doctrine of equitable mootness.  For the foregoing

reasons, the Court will grant the Motion to Dismiss.  An appropriate Order follows.

March 12, 2019                                    HONORABLE LEONARD P. STARK
Wilmington, Delaware                         UNITED STATES DISTRICT JUDGE